## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RODERICK BROWN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:25-cv-00194-MHH** |
| | } | |
| **TARA M. BURR-UPDIKE,** | } | |
| | } | |
| **Defendants.** | } | |
| | } | |
| | } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In this lawsuit, *pro se* plaintiff Roderick Brown asserts against Tara Burr-Updike state law claims and federal law claims concerning his communications with her on Ancestry.com.  (Doc. 1).  Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Ms. Burr-Updike has asked the Court to dismiss Mr. Brown's complaint.  (Doc. 5).  This order resolves the motion to dismiss.

The Court begins with Ms. Burr-Updike's Rule 12(b)(1) challenge to subject matter jurisdiction.  Mr. Brown asserts claims against Ms. Burr-Updike for violations of his First Amendment rights (Count III) and for violations of his civil rights (Count V).  Mr. Brown appears to bring his First Amendment claim pursuant to 42 U.S.C. § 1983, and his civil rights claim appears to arise under Title VII.[1]  The

---

[1] "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys" and are therefore "liberally construed."  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir.

1

Court may exercise jurisdiction over these federal law claims pursuant to 28 U.S.C. § 1331, and the Court may exercise jurisdiction over Mr. Brown's state-law claims pursuant to 28 U.S.C. § 1367.[2]  Therefore, the Court denies Ms. Burr-Updike's Rule 12(b)(1) motion to dismiss.

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, a district court must view the allegations in a complaint in the light most favorable to the non-moving party.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).  A district court must accept well-pleaded facts as true.  *Grossman v. Nationsbank*, *N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  Therefore, in deciding Ms. Burr-Updike's Rule 12(b)(6) motion to dismiss, the Court views Mr. Brown's allegations in his complaint in the light most favorable to him and draws all inferences from his factual allegations in his favor.

---

1998).  Mr. Brown asserts that his Civil Rights Act claims pertains to his race, gender, and ethnicity.  (Doc. 1, p. 37).  These are protected characteristics under Title VII.  *See* 42 U.S.C. § 2000e-2 (making it unlawful for an employer to discriminate against an employee based on the employee's "race color, religion, sex, or national origin").

[2] In his complaint, Mr. Brown alleged a Fourteenth Amendment claim and a claim for "cyberbullying" under 18 U.S.C. §§ 875, 2261a.  (Doc. 1, pp. 35–36, 38).  Mr. Brown voluntarily dismissed these claims in his response to Ms. Burr-Updike's motion to dismiss.  (*See* Doc. 12, pp. 13–14).

Mr. Brown alleges that he took an Ancestry.com DNA test and built a family tree. (Doc. 1, p. 16). Mr. Brown believed that Ms. Burr-Updike was a distant cousin, so he reached out to her on the website. (Doc. 1, p. 16). On April 15, 2024, Ms. Burr-Updike sent Mr. Brown the following message:

> Hi Cousin Rod! It's great to meet you! I believe you are related to me on my paternal side – my paternal Grandfather's . . . mother was Nora "Belle" Brake. I live in Alabama (all my life) don't know as much about my Dads side unfortunately. But! Ancestry.com has really been helpful!!

(Doc. 1, p. 17; Doc. 1-1, p. 24). Mr. Brown responded:

> Hi Cousin Tara! Thanks for connecting with me on Ancestry. Yes, Ancestry has confirmed that we are connected through James Marion Burr. Do you have other relatives on Ancestry that I may be connected? Please stay in touch!

(Doc. 1-1, p. 24).

Mr. Brown asked Ms. Burr-Updike to provide the names of her parents. (Doc. 1-1, p. 26). Ms. Burr-Updike declined and stated that the request did not seem legitimate. (Doc. 1-1, p. 26). When Mr. Brown asked Ms. Burr-Updike to explain what she meant, Ms. Burr-Updike responded:

> Why don't you [expletive] off you scammer! How dare you? You are what is wrong with this world. Your parents should be deeply ashamed with you!

(Doc. 1, p. 19; Doc. 1-1, p. 30). Mr. Brown then replied:

> WOW! This is considered defamation which is illegal. [I] take this personal since you are defaming me and my parents. I'll share your thoughts and comments with Ancestry and take action as required. I am

a highly successful executive with 3 college degrees and wanted to connect with my global family.

(Doc. 1-1, p. 28).

The rhetoric escalated.  Ms. Burr-Updike wrote: "Please bring it you [expletive] – I damn you to hell – and put curse on you and your pathetic lineage."

(Doc. 1, p. 18; Doc. 1-1, p. 28).  Mr. Brown retorted:

Anything you say can be used against you in the court of law.  Keep sharing your thoughts that can be part of a legal case against you for defamation and potential racism.  I will discuss with Ancestry to remove your tree from Ancestry and [I] will file a legal case against you for your illegal comments.

(Doc. 1-1, p. 30).  Ms. Burr-Updike continued:

But also, I would probably buy you a drink if you were in my country and laugh about how stupid life is – and the randomness of it all

Nothing I said was racist- maybe learn something about US law before saying such stupid comments. Glad u have three degrees though! Congratulations!

I am not a bad person – I am not the one trying to reverse engineer information about someone in order to scam them – YOU ARE.

(Doc. 1, p. 19; Doc. 1-1, p. 32).

Mr. Brown wrote:

You will be hearing from Ancestry to remove you and your tree.  You called me a scammer without any proof or knowledge and insulted my family.  Why don't you go after Ancestry if you believe they made a mistake in connecting us as cousins?

As I said earlier, all the information that you are sharing about me is false and I will take the appropriate action with Ancestry and my legal

4

team.    Nothing is reverse engineered on my part and I am not a scammer.  Why do you think that I am trying to scam you?

(Doc. 1-1, p. 32).

Mr. Brown later reached out to Ms. Burr-Updike and explained that he was extremely upset and that he would be filing "legal charges" against her in the Eastern District of Michigan for her messages in the text exchange.  (Doc. 1-1, p. 40).  Ms. Burr-Updike did not respond.  (*See* Doc. 1-1, p. 40).  According to Mr. Brown, Ms. Burr-Updike "communicated/published information and defamatory information about [Mr. Brown] to [Mr. Brown's] cousin-in-law, Charles Updike, cousin Jamie Burr-Sanders, cousin Tim Burr, other family members that reside with [Ms. Burr-Updike] and co-workers at University of Alabama Birmingham Medicine."  (Doc. 1-1, p. 8).

On May 11, 2024, Mr. Brown filed a complaint against Ms. Burr-Updike in the Eastern District of Michigan for the Ancestry.com communications and asserted claims for defamation per se – slander and libel – and intentional infliction of emotional distress.  Case No.: 2:24-cv-11527, Doc. 1, pp. 5, 7 (E.D. Mich. 2024).[3] Mr. Brown sought $5,000,000 in damages.  Case No.: 2:24-cv-11527, Doc. 1, p. 6 (E.D. Mich. 2024).  Ms. Burr-Updike moved to dismiss the action.  Case No.: 2:24-cv-11527, Doc. 1, p. 6 (E.D. Mich. 2024).  On October 21, 2024, the district court

---

[3] The Court takes judicial notice of the Eastern District of Michigan filings.  FED. R. EVI. 201(b); *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013).

in the Eastern District of Michigan dismissed the action for lack of subject matter jurisdiction. Case No.: 2:24-cv-11527, Doc. 22 (E.D. Mich. 2024). The district court found that the amount-in-controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332 was not satisfied because Mr. Brown could not "in good faith claim more than $75,000 in damages" based on the allegations in the complaint. Case No.: 2:24-cv-11527, Doc. 22, pp. 6–7 (E.D. Mich. 2024).

On December 17, 2024, Mr. Brown contacted Ms. Burr-Updike by email. (Doc. 1-1, p. 36). Mr. Brown explained that he planned to file a civil lawsuit in the Northern District of Alabama for, among other things, defamation, IIED, hate speech, and harassment and asked Ms. Burr-Updike to recant her statements and apologize. (Doc. 1, p. 31; Doc. 1-1, p. 36). Ms. Burr-Updike did not recant her statements or apologize. (Doc. 1, p. 31). On February 6, 2025, Mr. Brown filed this action. (Doc. 1).

The first federal law claim that Mr. Brown asserts is a First Amendment claim. The First Amendment "prohibits only *governmental* abridgement of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019) (emphasis in *Halleck*). It "does not prohibit *private* abridgement of speech" and therefore does not provide a remedy against a private actor for a purported First Amendment violation. *Halleck*, 587 U.S. at 808 (italics in *Halleck*). "Without governmental action, there can be no First Amendment violation." *United Egg Producers v.*

6

*Standard Brands, Inc.*, 44 F.3d 940, 942–43 (11th Cir. 1995).  Mr. Brown does not allege that Ms. Burr-Updike is a government actor.  Therefore, the Court will dismiss Mr. Brown's First Amendment claim.

For his second federal law claim, Mr. Brown asserts that Ms. Burr-Updike is liable for racially profiling him in violation of the Civil Rights Act of 1964.  (Doc. 1, p. 37).  The statutory schemes under the Civil Rights Act afford remedies against employers, not private individuals.  *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (holding that a private individual cannot be liable under Title VII); *Albra v. Advan, Inc.*, 490 F.3d 826, 829–834 (11th Cir. 2007) (holding that private individuals cannot be liable under the ADA).  Mr. Brown has not alleged and cannot plausibly allege that Ms. Burr-Updike is his employer.  Therefore, the Court will dismiss Mr. Brown's claim under the Civil Rights Act.

For his first state-law claim, Mr. Brown alleges that Ms. Burr-Updike's messages constituted defamation *per se* – slander (Count I) and defamation *per se* – libel (Count II).  (Doc. 1, pp. 29–32).  Under Alabama law, a defamation claim requires:

> 1) a false *and* defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement.

*Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003) (italics in *McCaig*) (quoting *McCaig v. Talladega Publ'g Co.*, 544 So. 2d 875, 877 (Ala. 1989)).[4]  To determine whether statements are defamatory, courts consider whether "a reader or listener of ordinary or average intelligence" would consider the statements defamatory.  *Flickinger v. King*, 385 So. 3d 504, 513 (Ala. 2023).  Name calling and statements of opinion do not amount to defamation.  *Flickinger v. King*, 385 So. 3d 504, 514–15 (Ala. 2023) (stating that calling someone a racist or accusing someone of supporting racism "amounts to nothing more than the expression of their opinions").

To constitute defamation *per se*, "there must be an imputation of an indictable offense involving infamy or moral turpitude."  *Regional Prime Television v. South*, 399 So. 3d 220, 254 (Ala. 2024) (quoting *Delta Health Grp. v. Stafford*, 887 So. 2d 887, 896–97 (Ala. 2004)); *see also Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091–92 (Ala. 1988).  In the absence of an accusation of criminal conduct, a plaintiff may maintain an action for slander "founded on oral malicious defamation subjecting the plaintiff to disgrace, ridicule, odium, or contempt" because "[i]n such case[,] the law pronounces the words actionable per quod," but "the plaintiff must allege and prove special damages as an element of the cause of action."  *South*, 399

---

[4] The Court applies Alabama law to evaluate Mr. Brown's state law claims because it is the law of the forum state.  *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

So. 3d at 254 (quoting *Stafford*, 887 So. 2d at 896–97) (brackets added).  "Special

damages are the material harms that are the intended result or natural consequence

of the slanderous statement, and the general rule is that they are limited to 'material

loss capable of being measured in money.'"  *South*, 399 So. 3d at 254–55 (quoting

*Casey v. McConnell*, 975 So. 2d 384, 390 (Ala. Civ. App. 2007)).

In his complaint, Mr. Brown asserts that Ms. Burr-Updike defamed him by

sending these messages:

> Why don't you [expletive] off you scammer! How dare you? You are
> what is wrong with this world. Your parents should be deeply ashamed
> with you!

> I am not the one trying to reverse engineer information about someone
> in order to scam them.  YOU ARE.

(Doc. 1, pp. 30, 32).  Mr. Brown asserts that these statements were published to some

of his relatives and to Ms. Burr-Updike's co-workers.  (Doc. 1-1, p. 8).  These

allegations do not support a defamation claim.  Ms. Burr-Updike referred to Mr.

Brown as a "scammer" and accused him of trying to scam her, but these statements

are not accusations of an "indictable offense involving infamy or moral turpitude,"

and Mr. Brown has not alleged special damages such as lost income because of

damage to his reputation.  *See South*, 399 So. 3d at 254-55; (Doc. 1, pp. 29–32).

Therefore, the Court will dismiss Mr. Brown's defamation claims.

Mr. Brown alleges that he suffered severe emotional distress because of Ms.

Burr-Updike's messages, and he asserts a claim against Ms. Burr-Updike for

9

intentional infliction of emotional distress or outrage.  (Doc. 1, pp. 41-43).  Under Alabama law, "[t]he tort of outrage is an extremely limited cause of action," available only in the most egregious circumstances.  *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011).  To state such a claim under Alabama law, a plaintiff must allege "that the defendant's conduct '(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.'" *Little*, 72 So. 3d at 1172 (citations omitted). Conduct must be so outrageous and so extreme that it extends "beyond all possible bounds of human decency" and is "regarded as atrocious and utterly intolerable in a civilized society."  *Little*, 72 So. 3d at 1173 (citations omitted).

The Alabama Supreme Court has imposed liability for the tort of outrage in three areas:  wrongful conduct in the family burial context; coercion in the settlement of an insurance claim; and egregious sexual harassment.  *21st Mortgage Corp. v. Robinson*, -- So. 3d --, 2024 WL 5179041, at *8 (Ala. 2024) (citing several Alabama Supreme Court cases); *Stabler v. City of Mobile*, 844 So. 2d 555, 560 (Ala. 2002). The Alabama Supreme Court has held that "there can be no recovery for mere profanity, obscenity, or abuse, without circumstances of aggravation, or for insults, indignities or threats which are considered to amount to nothing more than mere annoyances." *Logan v. Sears*, 466 So. 2d 121, 124 (Ala. 1985) (citing W. Prosser,

10

*Law of Torts*, 54–55 (4th ed. 1971)) (holding that the tort of outrage provided no relief to a man who the defendant described as "queer as a three-dollar bill").

Ms. Burr-Updike's language in her messages is derogatory and insulting, but it is not actionable under Alabama law for intentional infliction of emotional distress. *See Logan*, 466 So. 2d at 124.  For purposes of resolving Ms. Brown's Rule 12(b)(6) motion to dismiss, the Court accepts as true Mr. Brown's allegation that he has suffered emotional distress, and his request for an apology is reasonable, but Alabama law does not supply a remedy for his emotional distress.  Accordingly, the Court will dismiss Mr. Brown's claim of outrage against Ms. Burr-Updike.

For the reasons stated, the Court grants Ms. Burr-Updike's Rule 12(b)(6) motion to dismiss and dismisses Mr. Brown's claims without prejudice.  (Doc. 5). Because this dismissal resolves the remaining claims in this action, the other pending motions in this case are moot.  (Docs. 6, 9, 17, 19).  The Clerk of Court shall please TERM Docs. 5, 6, 9, 17, and 19 and close this case.

The Clerk of Court shall please also mail a copy of this order to Mr. Brown at the address on the docket sheet.

**DONE** and **ORDERED** this March 24, 2026.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

11